**UNITED STATES of America,
Appellee,**

v.

**Pedro MORANDO–ALVAREZ and Alejandro Moreno-Romero, Appellants.**

**Nos. 74–3224, 74–3186.**

United States Court of Appeals,
Ninth Circuit.

July 18, 1975.

---

Jo Ann Diamos, Asst. Federal Defender (argued), Tucson, Ariz., for appellants.

James Mueller, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

## OPINION

Before BROWNING and WALLACE, Circuit Judges and ENRIGHT,* District Judge.

ENRIGHT, District Judge:

This is an appeal from a jury verdict in which both defendants were found guilty of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The defendants' sole contention on appeal is that there was insufficient evidence to support a finding of guilt and that therefore, the trial court erred in denying their motion for judgment of acquittal. For the reasons stated below, we reject the defendants' contention and affirm the judgment.

On the date of the defendants' arrest, July 1, 1974, Customs Officers Budzeyko and Davis were traveling southeast on Duquesne Road. Duquesne Road is a two-lane dirt road surrounded by a ranch to the north and a stable to the south, located approximately two miles north of the Arizona-Mexico border, 22 miles northwest of the Lochiel port of entry. The officers were riding in a marked Customs patrol vehicle with a siren and red lights on the roof.

At approximately 3:30 p. m., the officers observed a green Pontiac, jacked up in the rear, approaching from the opposite direction at a fairly high speed. Budzeyko slowed down in order to observe the occupants of the Pontiac, and as the car passed the officers, they saw two men in the front seat who appeared frightened upon seeing them.

Budzeyko made a U-turn in order to pursue the Pontiac and make a radio check on the car's registration. There was a sharp turn in the road, so the car was momentarily out of the officers' sight. Upon rounding the curve, Budzeyko and Davis saw the Pontiac moving very slowly with both doors open and the two occupants of the car climbing over a fence on the side of the road. Budzeyko stopped his vehicle, ran to the Pontiac, and turned off the engine. When the car had stopped, he removed the keys from the ignition and opened the trunk, where he found three large sacks and smelled the odor of marijuana. The contraband charged was contained therein.

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

Davis had climbed over the fence in pursuit of the two occupants of the Pontiac. He heard a sound like a shot and fired in the direction of the two men. Budzeyko radioed for assistance and then attempted to catch up with Davis, but he saw that Davis was too far ahead. He returned to his car and drove approximately one mile to a higher vantage point, from where he observed the two subjects running, with Davis in pursuit.

Approximately 45 minutes after the Pontiac was abandoned, a heavy rainstorm began which became a hailstorm. After Davis had pursued the subjects for nearly an hour, he abandoned the chase.

Meanwhile, Customs Officers Padalino and Fergus had responded to Budzeyko's call for assistance. They drove into the hills in their four-wheel drive vehicle as far as the car was able to travel. They then proceeded on foot and soon observed two men running towards them. The officers concealed themselves in some bushes and waited for the men to approach. As the subjects stopped to rest, the officers moved in and apprehended them. Padalino testified that both men were scarred and bloody from what appeared to be thorn scratches. Their faces, arms, and legs were scratched and their clothes were torn. One of the men had lost his boots and his feet were torn from rocks and thorns.

■ The defendants first contend that there was insufficient evidence to support a finding that they were the two men who had abandoned the Pontiac, since neither Budzeyko nor Davis was asked at trial to identify the men they had seen in the car. However, Padalino identified the defendants as the individuals he had apprehended, and there was clearly sufficient evidence from which the jury could have concluded that the defendants were the men who had run from Budzeyko and Davis. No other car had passed through the area during the pursuit, and the condition of the defendants when they were apprehended indicated that they had been running through the brush for some time despite a heavy rainstorm.

The defendants' next contention poses greater difficulty. They argue that there was insufficient evidence from which the jury could have concluded that they were in possession of the marijuana. The contention is that the government's evidence, which consisted primarily of the defendants' frightened appearance upon seeing the officers and the circumstances attendant to their subsequent flight, was insufficient to prove that the defendants had possession of the marijuana in the Pontiac. Although the issue is not easily resolved, we are of the opinion that the evidence is sufficient to permit the jury to conclude that the defendants were both in possession of the contraband.

■■ Given the nature of the defendants' flight, we find that there was ample evidence to support a finding that both defendants had knowledge of the presence of the contraband in the vehicle. However, the defendants argue that while their flight may be probative evidence of knowledge that the marijuana was in the car, it does not indicate that they had possession of the marijuana. Possession requires that the defendants have dominion and control over the contraband. *Murray v. United States,* 403 F.2d 694 (9th Cir. 1968). We conclude that in the circumstances of this case, the defendants' frightened appearance and their unequivocal flight are of probative value on the issue of whether they were engaged in a joint venture involving the possession of marijuana. When such a joint venture is found, joint possession may also be found. "[T]he joint nature of the venture supported an inference that the defendant had *both knowledge of and control over* contraband concealed by a companion." *United States v. Campbell,* 507 F.2d 955, 958 (9th Cir. 1974) (emphasis supplied).

■ Circumstantial evidence sufficient to support a jury's finding of guilt may be found in the accumulation of several relatively insignificant pieces of evi-

dence, or it may be presented in the form of a single highly significant or incriminating event. The sudden unequivocal flight in the instant case, coupled with the defendants' nervous appearance when the Customs vehicle approached them, is such an event. Upon seeing a Customs vehicle approach from the *opposite* direction, the defendants abandoned their car while it was still in motion, climbed over a cattle fence, and ran into hills covered with thick brush. It appeared to the officers that the defendants fired a shot at them. The defendants continued to flee for over an hour, their clothes being torn and their bodies being scratched by thorns. One defendant lost his boots and continued to run, cutting his feet. Even a severe hailstorm did not halt their flight. Given these circumstances, we believe that the jury could have reasonably concluded that the defendants went to such lengths to escape the Customs officers because they were engaged in a joint venture involving possession of marijuana.[1]

This case is readily distinguishable from those in which the defendant is found in proximity to contraband or is a close associate of a person in possession of contraband. *See, e. g., Arellanes v. United States,* 302 F.2d 603 (9th Cir. 1963); *Evans v. United States,* 257 F.2d 121 (9th Cir. 1958). It is also distinguishable from a situation in which contraband is found in a room occupied by two persons, where it is "pure speculation" as to whether one of the two, or both, have possession. *Delgado v. United States,* 327 F.2d 641 (9th Cir. 1964). In those cases, it was held that the circumstance that contraband is found in proximity to a defendant or his property is insufficient to prove possession of the contraband. In the present case, rather than a passive occurrence such as a defendant's presence at the scene, we have striking and unequivocal action on the part of both defendants. We cannot say that it was impermissible for the jury to

infer that the reason for this significant action of the defendants was their joint possession of 70 pounds of marijuana.

In *United States v. Martinez,* 514 F.2d 334 (9th Cir. 1975), the court held that there was insufficient evidence of Martinez' equal participation in a joint venture to import narcotics by the mere fact that he was driving the car in which a facial tissue box containing cocaine was found. The court emphasized that the *only* evidence of Martinez' joint planning of a trip to Mexico to secure cocaine was Martinez' uncontradicted testimony that he had accompanied the group as a chauffeur and translator. His testimony was supported by evidence that another person had supplied the car and had the money involved in the transaction. At 340. We would liken the situation in *Martinez* to those cases in which the defendant was found in proximity to the contraband or was an associate of one in possession of contraband, as distinguished from the case before us, in which the defendants together made a dramatic, unequivocal, and prolonged attempt to flee from Customs officers.

This case is also distinguishable from *United States v. Anderson,* 453 F.2d 174 (9th Cir. 1971), in which the defendant's attempt to depart from a friend's hotel room when postal inspectors knocked on the door, announcing that they were from hotel management and wished to discuss the room bill, was held insufficient to prove that he was in possession of stolen mail found in the room. The "flight" of Anderson, if it may be characterized as such, was markedly different from the flight in the present case. There were several possible explanations for Anderson's attempt to leave the hotel room which would be consistent with his innocence of any involvement with the mail theft. Moreover, his flight consisted simply of an attempt to depart by a rear door, an act which posed no significant danger to him. In contrast, the defendants in the present case leaped

---

1. We note that the same argument concerning knowledge versus possession was considered and rejected by the jury.

886

from a moving car and encountered injury and severe discomfort in their flight from the Customs officers.

For the foregoing reasons, we would find the evidence sufficient to justify the jury's conclusion that the defendants were in possession of the marijuana and we would accordingly affirm the judgment.