UNITED STATES of America,
Plaintiff–Appellee,

v.

Millard P. CHAMBERS,
Defendant–Appellant.

No. 88–1474.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1990.

Decided Nov. 20, 1990.

Scott W. Pink, Marron, Reid & Sheehy, San Francisco, Cal., for defendant-appellant.

Rory K. Little, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before CHOY, FARRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

A jury found Millard P. Chambers guilty of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On appeal, Chambers argues the evidence was insufficient to support the verdict, the trial court erred in instructing the jury, he received ineffective assistance of counsel, and the trial court erred in admitting certain photographs into evidence. We have

jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

On April 30, 1988, officers of the San Francisco Police Department stationed themselves on Lillian Street in the "high crime narcotics" neighborhood of Hunter's Point. Sometime after 1:00 p.m., the officers saw a blue van speed around a corner toward their unmarked cars. A passenger was in the van with the driver. The van moved so fast that it swerved into oncoming traffic, barely avoiding a collision.

In response, Officer Peter Busalacchi activated the siren and red light in his car, and pursued the van. The van stopped around the corner. Officer Busalacchi approached the van and saw the passenger "doing something in between" the front bucket seats. The van then sped away.

Although other police cars were now in pursuit, the van continued to speed through the residential neighborhood, ignoring all traffic regulations. A second police car forced the van onto the sidewalk. Sergeant John Fowlie ran over to the driver's side of the van, drew his gun, and ordered the driver to turn off the engine. Sergeant Fowlie testified that he recognized the driver to be Chambers, whom he had met previously.

Despite Fowlie's order, the van's driver accelerated toward him. Fowlie jumped out of the way as the van sped away. Pursuit of the van continued. The van turned onto Quesada Street, a dead end street. Officer Busalacchi saw a red bag come out of the passenger side door of the van as it drove down Quesada Street. The driver eventually stopped the van at the bottom of some steps.

Approximately one-half block behind the van, Busalacchi saw the passenger leave the van and run up the steps. As Busalacchi approached the van, the driver also left the van and ran up the steps. The driver of the van slipped and dropped a paper bag. Cash spilled out onto the steps. As the driver stopped to pick up the cash, he looked directly at Officer Busalacchi. Busalacchi testified that he recognized the driver as Chambers, whom he had met on prior occasions.

Both the driver and the passenger then eluded the officers. Officer Busalacchi eventually went back to the steps and recovered the cash along with a pager. Officer Thomas Cleary responded to a call from a resident on Quesada Street who had seen the red bag fall out of the van. Officer Cleary recovered the bag. It contained two kilograms of cocaine.

The officers also searched the van. They found two cards addressed to "Millard," another pager, and a portable cellular telephone. The officers later discovered that the van was rented in the name of Lisa James, one of the pagers was leased in the name of Crystal Porter, and both James and Porter were listed as account holders for the cellular telephone. The police also found Chambers' fingerprint on the outside of the driver's door of the van.

Chambers was convicted on a one-count indictment for possession of two kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). This appeal followed.

## DISCUSSION

### A. Sufficiency of Evidence of Possession

Chambers argues that the evidence is insufficient to establish his possession of the cocaine.[1] We disagree.

■ To prove the element of possession, the government need not demonstrate "exclusive actual possession; it may be satisfied by proof of constructive or joint possession." *United States v. Soto*, 779 F.2d 558, 560 (9th Cir.1986), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987). Constructive possession may be demonstrated by "circumstantial evidence that the defendant had the power to dispose of the drug." *United States v. Disla*,

---

1. The parties stipulated that the amount of cocaine involved (2 kilograms) satisfied the intent to distribute requirement. *See, e.g., United States v. Valentin*, 569 F.2d 1069, 1071 (9th Cir.1978) (jury may infer intent to distribute from large quantity and value of drugs).

805 F.2d 1340, 1350 (9th Cir.1986). Conduct by the driver of a vehicle that appears intended to aid a passenger in disposing of the drug is probative of joint possession of the drug. *See United States v. Jackson,* 423 F.2d 506, 508–09 (9th Cir.) (cooperating by slowing down, pulling over to side of road, and then accelerating in an attempt to flee), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *Jackson v. United States,* 408 F.2d 306, 308 (9th Cir.1969) (cooperating by accelerating while passenger bends over and throws package of drugs from car).

■■■ The nature of an attempt to flee from law enforcement officials is probative of possession as well as knowledge. *United States v. Morando–Alvarez,* 520 F.2d 882, 884 (9th Cir.1975). In *Morando–Alvarez,* the defendants jumped from a moving car which contained 70 pounds of marijuana, and were pursued for over one hour. *Id.* at 885. The defendants' frightened appearance and "unequivocal flight" supported findings that they knew contraband was in the car, that they were engaged in a joint venture involving possession of the contraband, and that they jointly possessed it. *Id.* at 884.

■■■ Here, Chambers' flight was unequivocal and dramatic. The evidence showed that he engaged in a lengthy, high-speed car chase. In the process, he ignored traffic regulations, fled from officers three separate times, and almost ran over an officer. During the first time the van was stopped, Officer Busalacchi observed the passenger in the van "doing something in between" the front bucket seats. Chambers then sped away. It was during the last segment of the chase that the cocaine was ejected from the van.

From this evidence the jury reasonably could infer that Chambers knew the cocaine was in the van and jointly possessed it. *Morando–Alvarez,* 520 F.2d at 884; *Jackson,* 423 F.2d at 508–09.

**B. Jury Instructions**

Chambers argues that the district court erred in (1) instructing the jury on the element of possession, (2) failing to give a "mere presence, proximity and association" instruction, and (3) failing to define "knowingly." No objection to the jury instructions was made at the time of trial. Thus, we review Chambers' challenges to the jury instructions for plain error. "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Plain error requires a reversal "only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986).

**1. Possession Instruction**

Chambers contends that the district court erred by instructing the jury that it could "find possession where one person alone has possession, or where that person shares control with other persons." Chambers maintains there was insufficient evidence to support a finding of joint possession, and thus it was reversible error to give this instruction.

As previously discussed, there was sufficient evidence under *Jackson* and *Morando–Alvarez* from which a jury could reasonably find that Chambers jointly possessed the cocaine with his passenger.

■■■ Chambers argues, however, that the district court's possession instruction was erroneous under our recent decision in *United States v. Terry,* 911 F.2d 272 (9th Cir.1990). In *Terry,* we held that the trial court erred in giving the jury a possession instruction substantially identical to the instruction given in this case. The trial court in *Terry* initially instructed the jury:

> A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person, is then in constructive possession of it.

*Id.* at 279. After receiving a request for clarification from the jury during delibera-

tions, the court gave the jury a new possession instruction:

> Possession means having physical control of a thing. That control may be direct, as by actually holding the thing or indirect by having the power to control the thing while someone else may actually be holding it. The jury may find possession where one person alone has possession or where that person shares control with other persons.

*Id.* at 279.

In the present case, the trial court instructed the jury:

> Possession means having physical control of the thing. That control may be direct, as by actually holding a thing, or indirect, by having the power to control the thing while someone else may actually be holding it.
>
> You may find possession where one person alone has possession, or where that person shares control with other persons.

Reporter's Transcript, Vol. III at 351.

Both the possession instruction in *Terry* and the possession instruction in this case were taken from the Manual of Model Jury Instructions for the Ninth Circuit § 9.03B (1985).

Although the possession instruction in *Terry* and the possession instruction in this case are almost identical, the circumstances surrounding the giving of the instructions in each case are quite different. In *Terry*, during deliberations the jury asked the court for clarification of "intention at any given time." *Terry* at 279. In response to this request, the trial court reviewed its initial possession instruction and remarked: "Let me now say having given that instruction I don't like it because you focused in on a problem in that instruction and *it's use of the word 'intention.'"* *Id.* at 279 (emphasis added). The trial court then read its new possession instruction taken from the 1985 Model Jury Instructions previously quoted. Having done this, the court then told the jury: "See, that doesn't use that other—the *intention* aspect of that other instruction." *Id.* (emphasis added).

The trial court's remarks to the jury in *Terry*, coupled with the language of the 1985 Model Jury Instruction which the court gave, implied that the element of control necessary for possession was satisfied if it was shown that the defendant was merely "in the presence of the contraband and could reach out and take it" if he so desired. *Id.* at 280.

We have held repeatedly that neither proximity to the contraband, presence on property on which contraband is recovered nor association with a person having actual possession of the contraband is sufficient proof of constructive possession. *United States v. Behanna*, 814 F.2d 1318, 1320 (9th Cir.1987); *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir.1985); *United States v. Valenzuela*, 596 F.2d 824, 830–31 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *Arellanes v. United States*, 302 F.2d 603, 606 (9th Cir.), *cert. denied*, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962). Mere proximity, presence and association "go[ ] only to [the contraband's] *accessibility*, not to the dominion or control which must be proved to establish possession." *Soto*, 779 F.2d at 560 (emphasis added).

In the present case, the trial court emphasized that the evidence had to show that Chambers had control of the cocaine. In explaining "possession" in this context, the court told the jury, "Possession means having physical control of a thing. And the key word is 'control.'" Reporter's Transcript, Vol. III at 398.

In addition to the foregoing, a fundamental difference between *Terry* and this case is that defense counsel in *Terry* strongly objected to the court's possession instruction. Here, no objection was made. Thus, we review Chambers' challenge to the trial court's possession instruction for plain error.

In applying the plain error standard we consider " 'all circumstances at trial including the strength of the evidence against [the] defendant[ ].' " *United States v. Wagner*, 834 F.2d 1474, 1485 (9th Cir.1987) (quoting *United States v. Stout*, 667 F.2d

1347, 1354 (11th Cir.1982)). The evidence against Chambers was strong.

We conclude that the district court's possession instruction, coupled with its explanatory comments to the jury, did not amount to plain error.

### 2. Failure to Instruct on Mere Presence, Proximity and Association

■ Chambers argues the district court committed plain error by not instructing the jury that neither proximity to contraband, presence on property where it is located nor association with the person having actual possession is sufficient to establish constructive possession. We disagree.

Contrary to Chambers' contention, the case against him was not based primarily on his presence in the van and association with the passenger. The case against him was much stronger. As we have recounted, Chambers engaged in a lengthy, reckless high-speed chase in an attempt to get away. This conduct assisted his passenger in getting rid of the cocaine.

Moreover, Chambers' defense was that he wasn't the driver of the van. In essence, he said "I wasn't there." Given this defense, as we point out later in this opinion, it is not surprising that his trial counsel did not request an instruction which would have told the jury that his mere presence at the scene of the crime, proximity to the cocaine, or association with the passenger of the van would not be enough to convict him.

We conclude that the district court did not plainly err by failing to give a "mere presence, proximity and association" instruction.

### 3. Failure to Define "Knowingly"

■ Chambers argues that the district court committed plain error by failing to define the word "knowingly" for the jury. We disagree.

Chambers' trial counsel proposed no such instruction. It is not for this court to second-guess trial counsel's strategy in not asking the court to give certain jury instructions. In the context of Chambers'

defense that he was not the driver of the van, experienced defense counsel might have chosen not to ask the court to define the word "knowingly" for the jury. Moreover, in this case the definition of "knowingly" was obvious. There was no need to define it. The word is a common word which an average juror can understand and which the average juror could have applied to the facts of this case without difficulty.

We conclude that the trial court did not commit plain error in failing to define "knowingly" in its instructions to the jury. *See United States v. Brown,* 482 F.2d 1226, 1229 (8th Cir.1973) (holding that district court's failure to define "knowingly" under 21 U.S.C. § 841(a)(1) "was at most non-prejudicial error").

### C. Ineffective Assistance of Counsel

Chambers contends that he received ineffective assistance of counsel because his trial counsel (1) failed to present a defense on constructive possession, (2) failed to object to the possession instruction given to the jury, (3) failed to request an instruction that neither presence in the van, proximity to the contraband nor association with his passenger is sufficient to prove possession, and (4) failed to request an instruction which defined "knowingly."

To prevail on his ineffective assistance of counsel argument, Chambers must demonstrate "(1) that counsel's actions were 'outside the wide range of professionally competent assistance,' and (2) that the defendant was prejudiced by reason of counsel's actions." *United States v. Layton,* 855 F.2d 1388, 1414 (9th Cir.1988) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). To establish prejudice, Chambers "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

#### 1. Failure to Present Constructive Possession Defense

■ "We have repeatedly refused to second-guess counsel's strategic decision to present or to forego a particular theory of defense when such decision was reasonable under the circumstances." *Layton*, 855 F.2d at 1420.

Chambers' trial counsel chose to pursue an identity defense rather than challenge Chambers' possession of the cocaine. By limiting the defense to the identity of the driver, counsel prevented the government from introducing evidence of Chambers' two prior cocaine convictions and evidence that he was on probation for those convictions at the time of his arrest for the present offense. *See United States v. Powell*, 587 F.2d 443, 448–49 (9th Cir.1978) (excluding evidence of prior crimes when defense limited to disputing identity).

Competent trial counsel reasonably could have concluded that his client's best interests required a defense which precluded the introduction of his client's narcotics convictions. *Cf. Darden v. Wainwright*, 477 U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (trial counsel's decision not to introduce mitigating evidence not deficient because such evidence would have allowed prosecution to introduce damaging evidence); *Campbell v. Kincheloe*, 829 F.2d 1453, 1462 (9th Cir.1987), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Moreover, counsel did not concede that the driver of the van had possession of the cocaine. The prosecution still had the burden of convincing the jury beyond a reasonable doubt that Chambers was the driver and that he possessed the cocaine.

We conclude that Chambers did not receive inadequate representation by his trial counsel's failure to present a constructive possession defense.

#### 2. Failure to Object to Possession Instruction

■ Chambers argues that his trial counsel's performance was deficient because his counsel did not object to the district court's possession instruction. Chambers argues that had an appropriate objection been made, the court would have corrected what Chambers contends is an erroneous instruction under *United States v. Terry*, 911 F.2d 272, 280 (9th Cir.1990). We reject this argument.

*Terry* had not been decided when the district court instructed the jury in this case. We examine the reasonableness of counsel's conduct "as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. At the time of trial, the instruction given to the jury was the standard instruction on possession approved by the Ninth Circuit. *Cf. Pelmer v. White*, 877 F.2d 1518, 1522 (11th Cir.1989) (holding assistance not ineffective because counsel failed to object to instructions approved by state appellate court).

Additionally, in determining whether the failure to object caused prejudice, we "consider the totality of the evidence before the … jury." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069. The government introduced strong evidence of Chambers' possession of the cocaine. There is no reasonable probability that a more precise possession instruction would have affected the outcome of the case.

#### 3. Failure to Request an Instruction on Mere Presence, Proximity and Association

■ Chambers also faults his trial counsel for failing to request an instruction that neither proximity to contraband, presence on property on which contraband is located nor association with a person who possesses contraband is sufficient proof of possession.

While trial counsel chose to pursue an identity defense, Chambers' counsel on appeal argues that the central issue is whether the jury convicted Chambers based solely on his presence in the van. Trial counsel's conduct was not deficient merely because he chose to pursue a different line of defense than appellate counsel would have pursued. Further, the government's proof was not limited to Chambers' presence in the van. There is not a reasonable probability that a "mere presence, proximity and

association" instruction would have produced a different verdict. Chambers' trial counsel did not render deficient performance by failing to request a "mere presence, proximity and association" instruction.

### 4. Failure to Request Definition of "Knowingly"

 Finally, Chambers argues that his counsel was ineffective because he failed to request a definition of the word "knowingly." As we stated in our review of the jury instructions, a definition of "knowingly" was not necessary. In the context of this case an average juror would understand the concept without a specific definition, and competent counsel reasonably could have eschewed requesting such an instruction given the identity theory of the defense. Thus, failure to ask the court to define "knowingly" was not deficient conduct.

### D. Admissibility of Photographs

 Chambers contends the district court erred by admitting certain photographs of him found at Crystal Porter's residence. He argues the prejudicial effect of the photographs outweighed their probative value and they should have been excluded under Federal Rule of Evidence 403. We review the district court's decision to admit the photographs for an abuse of discretion. *United States v. Crespo de Llano*, 838 F.2d 1006, 1018 (9th Cir.1987).

The photographs at issue were relevant to show a close personal relationship between Chambers and Porter. This relationship, in turn, was relevant because officers found a cellular telephone and pager leased to Porter in the van. Establishing a relationship between Chambers and Porter helped the government prove that Chambers was the driver of the van.

 Chambers argues that defense counsel's proffered stipulation of a close personal relationship between Chambers and Porter diminished the probative value of the photographs. The government, however, did not accept this stipulation. We have held that the government may refuse to accept a defense counsel's stipulation and elect instead to prove the elements of the offense by introducing probative evidence. *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir.1986); *United States v. Campbell*, 774 F.2d 354, 356 (9th Cir.1985); *United States v. Gilman*, 684 F.2d 616, 622 (9th Cir.1982).

 Chambers' argument of undue prejudice from the photographs is based on his contention that the photographs showed him wearing expensive clothing and gold jewelry. This, he asserts, allowed the jury to convict him as a drug dealer because of his "dress and lifestyle." This argument is meritless. Chambers' dress may fit the Drug Enforcement Agency's ("DEA") "drug courier profile." *See United States v. Sokolow*, 831 F.2d 1413, 1417 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). It is highly unlikely, however, that jurors would attach the same meaning to Chambers' dress as would a DEA agent. We conclude that the manner of Chambers' dress as depicted by the photographs was not so prejudicial that it outweighed the probative value of the evidence. The district court did not err in admitting the photographs.

AFFIRMED.