972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Luis LUA, Defendant-Appellee
 No. 92-10286.
 United States Court of Appeals, Ninth Circuit.
 Aug. 18, 1992.
 
 Before CANBY, REINHARDT and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Luis Lua was charged with conspiracy to possess with intent to distribute and to distribute five or more kilograms of cocaine (Count I), and with possession of one kilogram of cocaine with intent to distribute (Count II). The jury acquitted him of the conspiracy charge but convicted him of the possession charge. The district court subsequently entered a judgment of acquittal on the possession charge, Count II. See Fed.R.Civ.P. 29(c). The government appeals that judgment. We affirm.
 
 
 3
 The government argues that there is sufficient evidence to convict Lua of possession under two different theories: co-conspirator liability under United States v. Pinkerton, 328 U.S. 640, 645-47 (1946), and dominion and control arising from constructive possession of the cocaine.[1]
 
 I. Pinkerton Liability
 
 4
 Although we are far from certain that we would find merit in the government's Pinkerton argument, we do not reach that theory here because the government waived it in the district court. In the Rule 29(c) hearing, the government did not argue that the evidence was sufficient under a Pinkerton theory; instead, it relied solely on evidence of constructive possession. See, e.g., RT May 7, 1992 at 1655 ("I believe that the court is correct in stating that the jury must have come to the decision that he was not a member of a conspiracy to distribute more than five kilograms of cocaine, but nevertheless had knowledge of one kilogram of cocaine and they based their verdict upon the facts in this case and they based their verdict on the fact that he handled one kilogram of cocaine when he passed it over to the driver of the Camaro"). The government had an opportunity to argue that the evidence was sufficient to convict Lua of possession on a Pinkerton theory, but it failed to present the issue. In light of this failure, we find that the government waived this argument.[2]
 
 
 5
 II. Dominion and Control Arising from Constructive Possession
 
 
 6
 The government's other proffered basis for Lua's conviction is that he was in constructive possession of the cocaine and therefore exercised dominion and control over it. See United States v. Chambers, 918 F.2d 1455, 1457 (9th Cir.1990) ("To prove the element of possession, the government need not demonstrate 'exclusive actual possession; it may be satisfied by proof of constructive or joint possession' ") (quoting United States v. Soto, 779 F.2d 558, 560 (9th Cir.1986), cert. denied, 484 U.S. 833 (1987)).
 
 
 7
 "In order to prove constructive possession of property, the government must demonstrate that the defendant both knows of the presence of the contraband and has power to exercise dominion and control over it.... Mere proximity to contraband, presence on property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession."
 
 
 8
 United States v. Behanna, 814 F.2d 1318, 1319-20 (9th Cir.1987) (quoting United States v. Rodriguez, 761 F.2d 1339, 1341 (9th Cir.1985)). See also Chambers, 918 F.2d at 1457 ("Constructive possession may be demonstrated by 'circumstantial evidence that the defendant had the power to dispose of the drug' ") (quoting United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986)).
 
 A. Evidence of Dominion and Control
 
 9
 Viewed in the light most favorable to the government, the evidence established the following with respect to Lua: first, that Ernest Benavidez was waiting for "Victor" and others to arrive, presumably with the cocaine; second, that Lua drove the Lincoln; third, that Lua engaged in counter-surveillance as he drove the Lincoln; and fourth, that Richard Carrillo leaned into the Lincoln for a couple of minutes. The evidence established nothing else with respect to Lua's involvement.
 
 
 10
 This evidence is insufficient to allow a reasonable jury to conclude that Lua exercised control over the cocaine. The facts that he drove the car and that it engaged in counter-surveillance do not establish constructive possession, as they reveal nothing about his control over the cocaine. With respect to the incident involving the stopped cars, there was no evidence that any cocaine actually changed hands, no references to any such exchange taking place, and no evidence that cocaine had ever been in Victor Corona's car. The only basis for a supposition that cocaine was exchanged was a witness's statement that, in his experience, drug sellers usually "transport the narcotics in one car and make the deal in another car." Moreover, even if it could be assumed that someone in the Lincoln did give cocaine to Carrillo when the cars were stopped, there is no evidence that Lua ever controlled it. At bottom, the only evidence here is that Carrillo leaned on the Lincoln, that Lua was driving, and that cocaine could have been passed to Carrillo although none was seen. This is insufficient to allow a reasonable jury to conclude that Lua " 'had the power to dispose of the drug.' " Chambers, 918 F.2d at 1457 (quoting Disla, 805 F.2d at 1350).
 
 
 11
 With respect to the fact that Benavidez stated that he was waiting for "them," persons who presumably had the cocaine, there is no evidence that Lua was one of them. No one stated Lua's name or otherwise suggested that he had a role. If it is assumed that Corona did bring the cocaine, there is still no evidence whatsoever that Lua ever had the power to control it. The only evidence that is relevant to Lua is Carrillo's and Benavidez's use of the plural, and the fact that, on November 26, 1991, Lua was with Corona. This evidence gave no real basis for a jury to conclude that Lua had the power to dispose of the cocaine. Thus, all of the government's evidence against Lua establishes, at most, his " 'proximity to contraband, presence on property where it is found, and association with a person or persons having control of it,' " which " 'are all insufficient to establish constructive possession.' " Behanna, 814 F.2d at 1319-20 (quoting Rodriguez, 761 F.2d at 1341).[3]
 
 B. Joint Venture
 
 12
 The government does not squarely address the question of Lua's power to control the cocaine, apparently because it concludes that such control need not be shown if there is a joint venture.[4] To the extent that the government suggests that a joint venture can be established without a showing of Lua's significant interest or role in the transaction, it misreads our cases. Our consistent position has been that, in all constructive possession cases, the government must establish that the defendant had or at least shared the power to control the contraband. See, e.g., Disla, 805 F.2d at 1351; United States v. Smith, 962 F.2d 923, 929-30 (9th Cir.1992). "In addition to association, the government must also establish that the defendant had a role in directing or planning the acquisition or transportation of the drugs." Smith, 962 F.2d at 930.
 
 
 13
 The government cites two joint venture cases in support of its contention that the evidentiary showing against Lua is sufficient, but in both the government's evidentiary showing was stronger than it is in the instant case. In the first, United States v. Hernandez, 876 F.2d 774 (9th Cir.), cert. denied, 493 U.S. 863 (1989), the following indicia of Hernandez's control were present: First, he met with an undercover FBI agent on numerous occasions to discuss the proposed drug deal. Id. at 775. Second, he had a possessory interest in the apartment where the cocaine was divided. Id. at 776, 778. Third, he was present when his roommate called the FBI agent to tell him the cocaine was ready. Id. at 776. Fourth, there was evidence that he was present at the attempted sale to the FBI agent. Id. The court concluded that, although none of the evidence established that Hernandez actually had the cocaine in his possession, his coordination of his activities with those of his codefendants, combined with the fact that he had a possessory interest in the apartment where the cocaine was divided, gave rise to an inference of constructive possession. In this case, of course, there is no evidence that Lua was present during the negotiations, no evidence that he had a possessory interest in the Lincoln, no evidence that he was present when the cocaine was being handled, and no evidence that he was present at the actual transaction (because the Lincoln was not parked near the place where the transaction occurred).
 
 
 14
 The second joint venture case cited by the government, United States v. Restrepo, 930 F.2d 705 (9th Cir.1991), also involved facts considerably stronger than those in this case. First, Restrepo met with undercover agents and informed them that he could provide significant quantities of cocaine. He negotiated with them, quoting prices for the drugs. Id. at 708. Second, one of his codefendants gave the drugs to an undercover agent by opening a secret compartment in a car that Restrepo had brought earlier that day. Id. Third, Restrepo was across the street at the time of the drug transaction. Id. These facts indicate that Restrepo had a high degree of involvement in the transaction and that he had the power to dispose of the drugs. They can be contrasted with the facts in the instant case, in which Lua was not involved in any negotiations, did not drive a car that was found to have (or have had) drugs in it, and was not within eyesight of the transaction.
 
 
 15
 A third, more recent, case in which we upheld a conviction of possession on a joint venture theory was United States v. Smith. In Smith, we viewed as determinative the fact that Smith had participated in the final discussion regarding the drug transaction. Smith, 962 F.2d at 930. Again, there is no evidence in the present case that Lua participated in any discussions.
 
 
 16
 In light of all of these factual differences, neither Fernandez, nor Restrepo, nor Smith can control this case. Finding insufficient evidence of Lua's "role in the planning of the transaction and in the decisionmaking process," Smith, 962 F.2d at 930, we reject the government's contentions that Lua is liable as a participant in a joint venture.
 
 CONCLUSION
 
 17
 We conclude that the government waived its Pinkerton argument and that the evidence of constructive possession is insufficient to support Lua's conviction for possession. For these reasons, the judgment of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 "The standard of review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Restrepo, 930 F.2d 705, 708 (9th Cir.1991)
 
 
 [2]
 The government suggested at oral argument that the district court should have given the parties time to prepare briefs, so that the parties could have presented more complete arguments. While we find the government's posture in the district court, adopted on short notice, to be understandable, we must reject the suggestion. The government did not object to the district court's handling of the Rule 29(c) motion, however; it did not even ask the district court for an opportunity to file a brief. Because the government has not raised this issue previously, we have no cause to consider it now
 
 
 [3]
 The government argues that "the jury reasonably could have inferred that Lua testified falsely, and such false testimony would establish further the sufficiency of the evidence as to Count Two. See United States v. Behanna, 814 F.2d 1318, 1320 (9th Cir.1987); United States v. Martinez, 514 F.2d 334, 341 (9th Cir.1975)." While it is true that both Behanna and Martinez allude to the possibility of a jury disbelieving a defendant and therefore concluding that the opposite is true, neither case suggests that such disbelief, standing alone, constitutes evidence supporting a conviction. We reject the government's conjectural contention
 
 
 [4]
 Because we have concluded that there was insufficient evidence to establish that the cocaine had ever been in the Lincoln when Lua was driving, we need not address the government's argument that Lua had constructive possession as the driver of a drug-laden vehicle