36 F.3d 1104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Jose Luis QUIJADA-CASTILLO, Defendant-Appellant/Cross-Appellee.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Daniel LEYVA, Defendant-Appellant/Cross-Appellee.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Manuel Enrique SOTELO-GAMEZ, Defendant-Appellant/Cross-Appellee.
 Nos. 93-10380, 93-10420, 93-10391,* 93-10419,
93-10392, 93-10418.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Sept. 2, 1994.
 
 1
 Before: LEAVY and KLEINFELD, Circuit Judges and VAN SICKLE,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Because we are not publishing, and the parties are entirely familiar with the case, we do not recite the facts.
 
 I. Batson Challenge
 
 4
 The defendant probably did not make a prima facie showing of discrimination. One Hispanic surnamed juror was stricken, but another was not. The issue of whether there was a prima facie case became moot, however, when the prosecutor explained her challenge and the court ruled on it. Hernandez v. New York, 500 U.S. 352, 359 (1991); United States v. Changco, 1 F.3d 837, 839-40 (9th Cir.1993). For that reason, absence of a prima facie showing does not matter to the decision.
 
 
 5
 The prosecutor explained her challenge as nondiscriminatory toward Hispanic jurors:
 
 
 6
 He's wearing a T-shirt, which is awfully casual to come into court. He's a bartender, which isn't the type of occupation I like on the jury. And he's got a goatee, which isn't the kind of facial hair that I'd like to have on jurors that are on my panel. For those reasons along with his attitude, wearing a T-shirt to Federal Court, wasn't the type of attitude that are usually prosecution-oriented.
 
 
 7
 (T.R. 67-68). The district judge was satisfied with this justification. This ruling was not clearly erroneous, so it stands. United States v. De Gross, 960 F.2d 1433, 1442 (9th Cir.1992) (en banc). There was no suggestion that other bartenders, or people in T-shirts, were not challenged. This distinguishes United States v. Chinchilla, 874 F.2d 695 (9th Cir.1989). A prosecutor might think that a bartender in a T-shirt would be less respectful toward her and government witnesses, and more inclined to listen sympathetically to defendants, than, say, civil servants who dressed as for church.
 
 II. Sufficiency of the Evidence
 
 8
 The record supports the denial of the motion for judgment of acquittal. A rational trier of fact, taking the evidence most favorably to the government, could have found each element of the crime beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 9
 The three appellants were all seen running away from the A & W stand where the cocaine had been dropped off. While the defense might have raised a doubt about whether these were the same people as the runners, there was sufficient evidence for a jury to decide that there was no doubt. Leyva still had the electronic communications headgear on and his gun in his hand. The other two defendants were in the yard where Leyva was found. It was hard to see why else the three of them would be in the yard that night. They were dressed alike in camouflage clothing. Sotelo-Gamez was still breathing hard, as from running.
 
 
 10
 The only substantial question raised arises from the darkness, and the fact that the officers did not see the defendants well enough to recognize them before the flight and identify them after the flight, nor did they see them at every moment during their flight. But the interruptions in view were not so substantial as necessarily to raise a doubt as to whether these were the same people who had run away from the A & W stand, helped Leyva when he tripped over the pipe, and left the cocaine, guns and clothes behind as they ran.
 
 
 11
 Once the three individuals were linked together, and to the group at the A & W stand, the other sufficiency issues fell away. Conspiracy could be inferred from the circumstances, because there was no likelihood of an innocent bystander or backpacker being along for the armed nighttime flight and the 597 pound cocaine stash. United States v. Buena-Lopez, 987 F.2d 657, 659 (9th Cir.1993).
 
 
 12
 The elements of possession with intent to distribute controlled substances are (1) knowingly (2) possessing the substance (3) with intent to distribute it. United States v. Walitwarangkul, 808 F.2d 1352, 1353 (9th Cir.1987). The element of possession may be satisfied by constructive possession, which in turn may be established by circumstantial evidence that the defendant had the power to dispose of the drug. United States v. Chambers, 918 F.2d 1455, 1457 (9th Cir.1990). An attempt to flee from law enforcement officials is probative of possession as well as knowledge. Id. at 1458.
 
 
 13
 The defendants' flight from the drop site, their camouflaged clothing, the quantity of cocaine found at the site and the other circumstantial evidence was sufficient for a reasonable juror to find that the defendants knowingly possessed the cocaine with the intent to distribute it.
 
 III. Downward Departure
 
 14
 We are compelled to reverse the sentencing determination by the district court and remand for resentencing. The departure from the guidelines was not adequately justified.
 
 
 15
 The district court departed downward primarily because the judge saw no deterrence value in the increment between the statutory minimum of ten years and the guidelines sentences of 235 to 293 months on Sotelo and Quijada, and 360 months to life on Leyva:
 
 
 16
 The Court makes a downward departure based on the Court's feeling that the minimum mandatory is exceedingly high and would do nothing to act as a deterrent to the citizens of the Republic of Mexico because of the socio-economic conditions.
 
 
 17
 (Statement of Reasons for Imposing Sentence, CR 82 (Sotelo-Gamez), CR 86 (Quijada-Castillo)[1], CR 77 (Leyva)).
 
 
 18
 Generally socioeconomic circumstances are "not relevant in the determination of a sentence." U.S.S.G. Sec. 5H1.10 (1992). Congress set up the Sentencing Commission to calibrate sentences according to deterrent and other values, 28 U.S.C. Sec. 994(d), and we cannot substitute our judgment for theirs. 18 U.S.C. Sec. 3553(b).
 
 
 19
 It may be that the court was departing downward for "mule" status. Responding to defense counsels' urging for such a departure, the judge said he was departing downward "not solely for that reason." That may imply that he was departing partly for that reason. But without findings, and an explanation of why the Commission's provisions for downward adjustments for minor and minimal roles would not control, a departure for mule status cannot be sustained on this record.
 
 
 20
 In United States v. Valdez-Gonzalez, 957 F.2d 643, 649 n. 3 (9th Cir.1992), poverty along the border was considered in a departure downward for a "mule." In the case at bar, the district court did not articulate the grounds for departure in terms of Valdez. Nor are we sure that he could. In Valdez, a minor or minimal participant adjustment was not available because Valdez was the only participant, so far as the court could determine, and the departure amounted to something equivalent to a minimal participant adjustment for a mule. We held that the Sentencing commission did not adequately take a sole-participant's minor role in an offense into account because it provided a downward adjustment only where multiple participants committed the offense. Valdez-Gonzalez, 957 F.2d at 648-49; see U.S.S.G. Sec. 3B1.2 and part B introductory comments (1992). In this case, there were numerous other participants, including the people who carried the backpacks of cocaine to the A & W stand and then walked back into Mexico. The judge did not make a finding regarding minor or minimal participation, and it is not obvious that he would have found a lesser degree of participation. The government plausibly argues that the people caught were the leaders, and no finding has been made to the contrary. Leyva's individual situation suggests even more strongly significant involvement because of the gun in his hand and the communications apparatus on his head.
 
 
 21
 In dicta, the Valdez court intimated that a downward departure may also be available where multiple persons committed the offense if a defendant played a minor role. Valdez-Gonzalez, 957 F.2d at 649. In the absence of a record requiring a determination, we are not prepared to rule on whether the dicta would be untenable. The Guidelines provide for downward adjustments for minimal and minor participation where the offense was committed by more than one person. U.S.S.G. Sec. 3B1.2 and part B introductory comments (1992). Generally there cannot be a departure unless the ground was "not adequately taken into consideration" by the Commission. 18 U.S.C. Sec. 3553(b). Where there is a group of narcotics smugglers, and some have lesser roles than others, the Commission has taken their respective roles into account, so a departure is generally not appropriate.
 
 
 22
 Also, the extent of the departure was not explained in Lira-Barraza terms. United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc). If a departure were justified, the district court would have been required to include a reasoned explanation of the extent of the departure, founded on the structure, standards, and policies of the Guidelines. Id. at 751.
 
 
 23
 AFFIRMED in part, VACATED and REMANDED for resentencing.
 
 
 
 *
 The panel unanimously finds Daniel Leyva's case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Fred L. Van Sickle, District Judge for the Eastern District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court noted socio-economic and family circumstances as reasons for Quijada-Castillo's departure. Quijada told the court that he committed the crime because he had been unemployed for weeks and his son did not have milk or diapers. Sentencing Transcript at 5. But see U.S.S.G. Sec. 5H1.6 (1992) (family ties and responsibilities not ordinarily relevant in determining whether sentence should be outside guideline range.)