72 F.3d 136
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dino BRADLEY, Defendant-Appellant.
 No. 94-50655.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 15, 1995.
Decided Dec. 7, 1995.
 
 1
 Before: HALL and NOONAN, Circuit Judges, and SHUBB,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Dino R. Bradley appeals from the district court's denial of his motion for a new trial upon the grounds of ineffective assistance of counsel. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 4
 This case arises out of the robbery of the Hillcrest Station United States Post Office on September 29, 1993, in Inglewood, California. The fact that the robbery occurred was not disputed at trial. The question for the jury was whether Bradley organized and participated in the offense.
 
 
 5
 At trial the government introduced evidence that Bradley planned and orchestrated the armed robbery. The evidence (1) linked Bradley directly to the robbery[1], (2) impeached Bradley's statements that he did not know the accomplices, and (3) rebutted Bradley's alibi defenses. With regard to the alibi defenses, Bradley testified that at the time of the robbery he was purchasing a television set with a friend in an electronics store. This was rebutted by the government's evidence that the time-stamped and numbered receipt Bradley relied upon to confirm his purchase and whereabouts was falsified. Bradley next testified that the vehicle he allegedly used to commit the robbery was in an auto repair shop at the time of the robbery. To support his claim, Bradley relied upon a "paid repair order" receipt from the auto shop and the testimony of the shop owner. Here too, however, the government introduced evidence that the auto receipt was falsified. The government also introduced evidence which contradicted the shop owner's testimony that he did not know Bradley and had never employed him.
 
 
 6
 Also introduced at trial was the stipulated testimony of Oscar Vega, an eyewitness to events immediately preceding the robbery. After determining that Vega was unavailable for trial, the parties entered into a stipulation of what Vega's testimony would have been were he present. The stipulation consisted of statements Vega allegedly made to police officers on the day of the robbery. It stated that Vega was able to identify some of the perpetrators but was silent as to Bradley. The stipulation also stated that Vega would testify about a group of Black males in a gray Honda, a white Maxima and a gold Cadillac who circled the post office in a suspicious manner.
 
 
 7
 On August 12, 1994, after a jury trial, Bradley was convicted of armed postal robbery, conspiracy and using a firearm during and in relation to a crime of violence. Bradley subsequently retained new counsel, who sought a new trial based on the allegedly ineffective assistance of trial counsel in failing to locate Vega and call him as a witness. On December 12, 1994, the district court held an evidentiary hearing on the motion. The only witness called at the hearing was Vega who testified that the stipulation regarding his testimony was accurate. Vega also testified that while he saw five people in the cars circling the post office,[2] he did not see Bradley and could not identify Bradley as one of the persons he saw on the day of the robbery. Vega further testified that he did not see a gold colored Honda (Bradley's car) outside the post-office. Vega was not, however, questioned regarding his whereabouts or availability at the time of trial.
 
 
 8
 On January 6, 1995, the district court issued an order denying Bradley's motion for a new trial. The court found, based on its observations of the trial and its examination of the performance of trial counsel throughout trial, including the presentation of an affirmative defense of alibi, that trial counsel had not rendered ineffective assistance at trial. The district court further found that Bradley had not suffered any prejudice because the evidence against him was "overwhelming" and that Vega's testimony would not have had a reasonable probability of changing the verdict.
 
 DISCUSSION
 
 9
 Bradley bases his claim of ineffective assistance of counsel upon the fact that his trial counsel failed to locate Vega and call him as a witness. Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo. Sanchez v. United States, 50 F.3d 1448, 1456 (9th Cir.1995). In order to prevail, a defendant must show (1) that his trial counsel's representation fell below an objective standard of reasonableness and (2) that defendant was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). It is generally appropriate for a reviewing court to assess trial counsel's "overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the strong presumption that counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386, 106 S.Ct. 2574, 2589 (1986). Furthermore, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Id., at 381, 106 S.Ct. at 2586. We hold that Bradley's counsel's performance was not defective and that Bradley was not prejudiced by any error.
 
 
 10
 A. Trial Counsel's Representation Fell Within Objective
 
 Standard Of Reasonableness
 
 11
 Bradley's claim that his trial counsel's representation was defective fails for two reasons. First, a review of counsel's overall performance reveals that he rendered reasonably professional assistance. Trial counsel put on a competent, albeit unavailing, affirmative defense of alibi. Counsel also attempted to work around Vega's unavailability by (1) arguing that the government had the obligation to produce Vega for trial, and (2) entering into a stipulation with the government whereby Vega's testimony, which in effect provided that he did not identify Bradley or his gold colored Honda at the robbery, was admitted.
 
 
 12
 Second, the record is insufficient to conclude that the failure to call Vega as a witness was due to any error on trial counsel's part. To the contrary, trial counsel specifically requested Vega's address prior to trial but was informed that Vega's whereabouts were unknown. Counsel's reliance on the government's representation that Vega was unavailable was not unreasonable. Counsel relied on the representation only after learning that Vega was not at his last known address and that he did not respond after his mail was withheld. Moreover, at the time of the alleged error, trial counsel had no way of knowing whether Vega could identify Bradley. Under these circumstances, trial counsel was reasonable in devoting his attention to developing Bradley's alibi defense, rather than attempting to track Vega down. See United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir.1990). Accordingly, Bradley's trial counsel's performance fell within the wide range of reasonable representation.
 
 
 13
 B. Bradley Suffered No Prejudice As A Result Of Trial
 
 Counsel's Performance
 
 14
 In order to show prejudice, Bradley must show that "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Such a showing may not be speculative, but instead must demonstrate "a reasonable probability that but for the errors, the result of the proceeding would have been different." United States v. Cochrane, 985 F.2d 1027, 1030 (9th Cir.1993).
 
 
 15
 We agree with the district court's finding that the evidence was overwhelming, and we further find that given the state of the evidence at trial, Vega's testimony could not reasonably be expected to have changed the result. Vega never testified that he actually witnessed the crime or that he saw all of the robbers.[3] Moreover, the jury had the opportunity to consider Vega's stipulated testimony, which suggested that neither Bradley nor his gold Honda was at the scene of the crime. Therefore, even if trial counsel erred, Bradley suffered no prejudice.
 
 
 16
 The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government's evidence was based largely upon the testimony of four accomplices
 
 
 [2]
 Including Bradley, the government indicted six individuals for the robbery
 
 
 [3]
 Indeed, while able to identify some of the co-conspirators, Vega was unable to identify Bradley or another co-conspirator, who later admitted his involvement in the crime and pled guilty